MATTER OF ANTOLIN

In Deportation Proceedings

A-13784760

*Decided by Board February 17, 1967*

Respondent, a native and citizen of the Philippine Islands, who prior to December 24, 1952, entered Guam where he was employed as a qualified medical technician and who continued to reside in Guam until his final departure therefrom in 1957, notwithstanding his temporary absences therefrom during that period, is entitled to the presumption of lawful permanent residence under 8 CFR 4.2 (j) [now 101.1(i)]; however, since respondent voluntarily departed Guam to reside in the Philippine Islands, where he has resided continuously since 1957 until 1965 and where he has gained permanent roots by his own voluntary acts, he cannot be regarded as still possessing a claim to permanent residence inasmuch as his status has changed.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Remained longer—Visitor.

ON BEHALF OF RESPONDENT:
Dan P. Danilov, Esquire
1101 Dexter Horton Bldg.
Seattle, Washington 98104
(Brief filed)

ON BEHALF OF SERVICE:
R. A. Vielhaber
Appellate Trial Attorney

B. G. Greenwald
Trial Attorney
(Brief filed)

The case comes forward on appeal from the order of the special inquiry officer dated September 15, 1966 finding the respondent deportable on the charge contained in the order to show cause, granting him the privilege of voluntary departure in lieu of deportation with the further order that if the respondent failed to depart when and as required, he be deported to the Republic of the Philippines on the charge contained in the order to show cause.

The record relates to a native and citizen of the Philippine Islands, about 51 years old, male, who last entered the United States on April 10, 1965, as a nonimmigrant visitor for pleasure. He was found to have been gainfully employed since October 18, 1965 in violation of his status and was granted until November 8, 1965 to depart. He has re-

127

mained in the United States beyond the period authorized for his departure. After a hearing an order was issued November 19, 1965 finding him deportable and granting him voluntary departure or ordering him deported in the event he did not depart as directed. No appeal was taken from this decision. A motion to reopen was granted May 12, 1966 in order to permit the respondent to present additional evidence that he comes within the provisions of 8 CFR 4.2(j) promulgated December 8, 1954, effective January 3, 1955, as a person who acquired lawful permanent residence status as a result of residence in Guam.

At the reopened hearing it was developed that the respondent enlisted in the United States Army at Camp Murphy, Philippine Islands on February 19, 1946 and was honorably separated May 23, 1947. Prior to leaving the armed forces, he received a letter from the Army Office of the Surgeon dated April 23, 1947 recommending him as a laboratory technician who had received sixteen weeks training in the army in that category and had previously been a civilian employee of the army in the same capacity. A letter from the medical director of the respondent's employer dated December 8, 1948 stated that the respondent had been associated with the medical department at Guam since November 4 1947 and recommended him as a qualified medical laboratory technician at any institution having complete facilities of a clinical laboratory.

Evidence produced at the hearing established that the respondent was employed at Guam as a medical technician since October 1947 and since March 1953 as a senior medical technician until October 6, 1956. The employment was continuous except for temporary visits to the Philippine Islands. He testified that before returning to the Philippines from Guam in 1957, he applied to the Immigration Service for permanent residence, but his application was not granted. No record of his application could be located.

The regulation upon which the respondent rests his claim to having been granted lawful permanent residence in the United States, 8 CFR 4.2(j), relates to aliens admitted to Guam prior to December 24, 1952 who can establish by records, either through government agencies or contractors of government agencies, that they were admitted other than as a contract laborer and were not otherwise excludable under the Act of February 5, 1917, as amended, and who continued to reside in Guam until December 24, 1952 regardless of the period of time for which they were admitted. This regulation was subsequently amended October 26, 1956 to exclude from its provisions those aliens who had been, after December 24, 1952, admitted or read-

mitted to Guam as nonimmigrants. The present regulations incorporate these provisions in 8 CFR 101.1(i).

The controlling precedent in these circumstances is *Matter of C—Y—L—*, 8 I. & N. Dec. 371 (1959). We agree with the special inquiry officer that the respondent qualified under the original provisions of 8 CFR 4.2(j) because the work he performed required mental rather than merely manual effort as its dominant element and therefore he did not come under the contract laborer bar of the regulations; he was admitted to Guam prior to December 24, 1952 and can establish by records of the contractor that he continued to reside in Guam until subsequent to December 24, 1952. Inasmuch as he complies with the conditions of this regulation he should have acquired permanent residence status under that regulation as of the effective date of the regulation on January 3, 1955. The amendment of October 26, 1956 did not affect the acquisition of the respondent's status as a permanent resident under 8 CFR 4.2(j) as originally enacted on December 8, 1954 since such status had already been vested. *Matter of C—Y—L—*, *supra*, p. 379. The respondent was entitled to the presumption that he was a permanent resident of the United States under 8 CFR 4.2(j) and that this status continued until his final departure to the Philippine Islands in October 1957.

Accepting the premise that the respondent had permanent residence until his departure to the Philippines in 1957, the question remains whether his absence thereafter, without knowledge that he had such permanent residence, served to divest him of his permanent residence status. The evidence shows that when the respondent returned to the Philippine Islands in 1957 he intended to establish permanent residence there as evidenced by the fact that he resided there with his family, was employed there and attended to various private business enterprises. The claim of the respondent is that had he known he was entitled to presumption of permanent residence under 8 CFR 4.2(j), he would not have returned to the Philippine Islands but would have brought his family to the United States and resided here. However, we must determine the case upon the facts and not upon mere speculation.

The term "lawfully admitted for permanent residence" as defined in section 101(a)(20) of the Immigration and Nationality Act means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, *such status not having changed*. The term "resident" as defined in section 101(a)(33) of the Act means the place of general abode; the place of general abode of a person means his

principal, actual dwelling place in fact, without regard to intent. Even accepting that the respondent was entitled to presumption of lawful permanent residence which he acquired by his residence in Guam, is he in any better position than a person who had immigrated to the United States for permanent residence with a visa and thereafter has been absent from the United States for as long a period as the present respondent? We believe that by the nature and length of the absence, respondent's status has changed as that term is used in section 101(a)(20) of the Immigration and Nationality Act and he can no longer be regarded as a returning resident.

In a similar case involving a Mexican alien who was admitted to the United States when 7 years old and thereafter was immediately returned by her father to Mexico where she resided continuously except for temporary visits, it was held that the alien could not be regarded as returning to an unrelinquished permanent lawful residence after a temporary absence abroad. *Matter of Sias*, Int. Dec. No. 1467. The alien, in view of her entry at such a young age and her immediate departure, probably was not aware of her permanent residence status. Nonetheless, it was held she was not admissible at the time of her application for admission unless in possession of a valid immigration visa.

Where a person had no knowledge that he had a claim to United States citizenship at the time he comimtted an expatriating act, he did not lose United States citizenship.[1] The Attorney General was influenced by the Supreme Court's emphasis that where deprivation of the "precious right of citizenship" is involved, "the facts and the law should be construed as far as reasonably possible in favor of the citizen," citing *Nishikawa* v. *Dulles*, 356 U.S. 129.[2]

However, the instant case is not comparable to cases involving the loss of United States citizenship with its accompanying heavy burden. Here the respondent at best was entitled merely to a presumption of lawful permanent residence which he gained by his residence in Guam. Granting that he has been found to be entitled to such status, he is in no better position than a person who immigrated to the United States for permanent residence with a visa and who under similar circumstances would have been considered to have abandoned his permanent residence status. The departure of the respondent to the Philippines

---

[1] *Matter of C—S—*, 9 I. & N. Dec. 670 (A.G., 1962); *Matter of C—A—*, 9 I. & N. Dec. 482; *Rogers* v. *Patokoski*, 271 F.2d 858 (9th Cir. 1959).

[2] See also *Schneiderman* v. *United States*, 320 U.S. 118 and *Gonzales* v. *Landon*, 350 U.S. 920 where the Supreme Court in denaturalization and expatriation cases required the Government to establish its allegations by clear, unequivocal and convincing evidence.

was entirely voluntary, without duress or coercion and was in accord with his own wishes to reside in that country. Under the circumstances of the case we are unable to find that the respondent, who has resided in the Philippines continuously since 1957 until October 1965, who has gained permanent roots in that country by his own voluntary acts, can be regarded as still possessing a claim to permanent residence in this country, inasmuch as his status has changed. The appeal will be dismissed.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.